**THIS IS A CAPITAL CASE**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | |
|---|---|
| JACK HAROLD JONES | PLAINTIFF |
| v.    Case No. 5:10CV00065 JLH | |
| RAY HOBBS, in his official capacity as Acting Director of the Arkansas Department of Correction | DEFENDANT |
| DON W. DAVIS; ALVIN BERNAL JACKSON; KENNETH DEWAYNE WILLIAMS; STACEY EUGENE JOHNSON; JASON FARRELL MCGEHEE; and BRUCE WARD | INTERVENORS |

**OPINION AND ORDER**

Jack Harold Jones, Don W. Davis, Alvin Bernal Jackson, Kenneth Dewayne Williams, Stacey Eugene Johnson, Jason Farrell McGehee, and Bruce Ward brought this action pursuant to 42 U.S.C. § 1983 alleging that Arkansas's recently enacted Methods of Execution Act[1] ("MEA") violates the due process clause of the Fourteenth Amendment to the United States Constitution and the *ex post facto* clause in Article I, Section 10 of the United States Constitution. The Court dismissed the complaints without prejudice for failure to state a claim upon which relief may be granted. The plaintiffs have now filed a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure asking the Court to vacate the judgment dismissing their complaints. All of the plaintiffs argue that newly discovered evidence warrants setting aside the judgment and permitting them to amend their complaints. McGehee and Ward make an additional argument. They alleged in their complaints that the Arkansas Department of Correction ("ADC") violates the Food, Drug and

---

[1] The full title of the MEA is "An Act to Clarify the Existing Procedures for Capital Punishment by Lethal Injection; and for Other Purposes." 2009 Ark. Acts 1296. It is codified at Ark. Code Ann. § 5-4-617 (2009 Supp.).

Cosmetic Act and the Controlled Substances Act by using drugs in lethal injection without FDA approval and without a prescription. The Court failed to address those claims in the opinion and order explaining the reasons for the dismissal. McGehee and Ward argue that the judgment of dismissal should be vacated as to them because the Court failed to address those claims. The plaintiffs other than McGehee and Ward, as a part of the relief that they request, seek leave to amend their complaints to assert claims that the ADC violates the FDCA and the CSA.

## I.

Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence. *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). Rule 59(e) motions "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id*. The moving party must show that the evidence was discovered after the trial, that the moving party exercised due diligence to discover the evidence before the trial ended, that the evidence is material and not merely cumulative or impeaching, and that a new trial including the new evidence would probably produce a different result. *Id*.

The new evidence presented by the plaintiffs includes an article from the *Texarkana Gazette*, which attributes to Dina Tyler, Public Information Officer for the ADC, a statement that the MEA allows the Department of Correction "flexibility in case one of the chemicals used in lethal injections became unavailable, was improved or a more effective substitute emerged." This flexibility, according to the article, would allow executions to proceed, instead of having to be stayed until the Legislature changed the protocol. The article also states that Tyler "said the department provides information about the drugs and procedures for execution to each death row inmate." The article

does not state that there is a high likelihood that the protocol will in fact be changed prior to the execution of any of the plaintiffs in this action. The article does not support the plaintiffs' allegations that the lethal injection protocol might be changed under circumstances in which they could not discover and challenge the changed protocol.

The plaintiffs also offer an article from an Ohio newspaper discussing a worldwide shortage of the anesthetic used in lethal injections. However, the article does not suggest that the ADC is without the anesthetic or that it is likely that the anesthetic will be unavailable to the ADC. Nor does the article suggest that if the anesthetic were unavailable the ADC would change the protocol and proceed with lethal injections using no anesthetic.

In summary, the newly discovered evidence does not show that it is likely that the protocol will be changed before execution of any of the plaintiffs or that the plaintiffs would be prevented from learning of any such change, if one occurs. Even if the complaints were amended to include the information in the two news articles, the complaints would still fail to raise the right to relief above a speculative level and therefore would still fail to state a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).

**II.**

As mentioned, McGehee and Ward contend that the ADC violates the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 801 *et seq.*, as well as the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 301 *et seq.* The Court granted McGehee's and Ward's motions to intervene in the same order in which the Court dismissed all of the plaintiffs' complaints for failure to state

a claim, but the Court failed to address McGehee's and Ward's claims that the ADC violates the FDCA and the CSA.

The complaints by McGehee and Ward allege four counts that are relevant to the present issue. Count 3 alleges that the FDCA forbids the administration of any dangerous drug without a prescription by a practitioner who is licensed by law to administer such drugs, citing 21 U.S.C. § 353. Count 3 then alleges that the ADC does not have or intend to obtain a valid prescription for the drugs that would be used in an execution by lethal injection. Count 4 alleges that the FDCA requires that drugs obtained through interstate commerce be approved by the FDA for their intended use, citing 21 U.S.C. § 355. Count 4 then alleges that the drug or drugs that the ADC intends to use in execution by lethal injection have not been approved by the FDA for that use. Count 5 alleges that the CSA forbids the administration of any controlled substance without a valid prescription, citing 21 U.S.C. § 829(b). Count 5 then alleges that the ADC intends to use in lethal injection one or more controlled substances and does not have a valid prescription for those controlled substances. Count 6 alleges that the CSA requires that any person who dispenses or proposes to dispense a controlled substance must obtain a registration from the Attorney General permitting him to do so, citing 21 U.S.C. § 822. Count 6 then alleges that the ADC intends or proposes to dispense one or more controlled substances during execution without obtaining registration from the Attorney General. In their prayers for relief, McGehee and Ward request that the Court declare that the defendants are violating or threatening to violate the FDCA and the CSA and, in addition, that the Court grant a permanent injunction pursuant to 28 U.S.C. § 2202 barring execution under the MEA and in violation of the FDCA or CSA.

The district courts of the United States have jurisdiction to enjoin violations of the FDCA. 21 U.S.C. § 332. Except for actions by a state to enforce specified sections of the FDCA, all proceedings to enforce or to restrain violations of the FDCA must be brought by and in the name of the United States. 21 U.S.C. § 337. Thus, the FDCA does not provide for a private right of action to enforce its provisions. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4, 121 S. Ct. 1012, 1018, 148 L. Ed. 2d 854 (2001) ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions: 'All such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States.'" (citing 21 U.S.C. § 337(a))); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 788 (3rd Cir. 1999) ("It is well settled . . . that the FDCA creates no private right of action."). Similarly, the CSA provides that the district courts of the United States have jurisdiction to enjoin violations of that statute, 21 U.S.C. § 882(a), but Congress provided no private right of action to enforce its provisions, *McCallister v. Purdue Pharma L.P.*, 164 F. Supp. 2d 783, 793 n.16 (S.D. W. Va. 2001).

McGehee and Ward do not contend that the FDCA or the CSA creates a private right of action. Instead, they argue that a court may entertain a suit seeking a declaration that the ADC has violated or will violate those statutes even though Congress provided for no private right of action under either of them.

Two district courts and one court of appeals have addressed the issue. The Western District of Missouri held that inmates facing death by lethal injection may bring an action pursuant to the Declaratory Judgment Act seeking a declaration that the state's lethal injection protocol violates the FDCA and the CSA even though those statutes create no private right of action. *Ringo v. Lombardi*,

Case No. 09-4095-CV-C-NKL, 2010 WL 750055 (W.D. Mo. Mar. 2, 2010). The Southern District of Ohio held, in contrast, that inmates facing death by lethal injection may not bring an action for declaratory judgment under those statutes. *Durr v. Strickland*, No. 2:10-cv-288, 2010 WL 1610592 (S.D. Ohio Apr. 15, 2010). The Sixth Circuit affirmed the decision of the Southern District of Ohio. *Durr v. Strickland*, 602 F.3d 788 (6th Cir. 2010). The Sixth Circuit noted that the opinion of the district court was based in part on the fact that "no private right of action exists under either act." *Id*. at 789. The Sixth Circuit held, without explanation that "declaratory relief is not the proper mechanism for seeking injunctive relief from execution." *Id*.

      McGehee and Ward's argument that a party without a private right of action may nevertheless seek a declaratory judgment is based largely on the opinion in *Franklin v. Massachusetts*, 505 U.S. 788, 112 S. Ct. 2767, 120 L. Ed. 2d 636 (1992). In *Franklin*, the State of Massachusetts and two registered voters brought an action against the President of the United States, the Secretary of Commerce, Census Bureau officials, and the Clerk of the House of Representatives challenging the method for counting federal employees serving overseas. A three-judge panel held that the decision to allocate military personnel serving overseas to their homes of record was arbitrary and capricious under the standards of the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*. The panel directed the Secretary of Commerce to eliminate the overseas federal employees from apportionment counts, directed the President to recalculate the number of representatives per state and transmit the new calculation to Congress, and directed the Clerk of the House of Representatives to inform the states of the change. After holding that the President's actions could be reviewed for constitutionality but not for abuse of discretion under the Administrative Procedures Act, the Supreme Court turned to the issue of whether the plaintiffs had standing to satisfy the "case or controversy" requirement of

Article III. *Franklin*, 505 U.S. at 801-803, 112 S. Ct. at 2776-77. The Court first noted that constitutional challenges to apportionment are justiciable. *Id*. at 801, 112 S. Ct. at 2776 (citing *Dept. of Commerce v. Montana*, 503 U.S. 442, 112 S. Ct. 1415, 118 L. Ed. 2d 87 (1992)). The Court then remarked that standing requires pleading and proving an injury traceable to the defendants' unlawful conduct that is likely to be redressed by the requested relief. *Id*. (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 3324, 82 L. Ed. 2d 556 (1984)). Finding that there was an injury because Massachusetts would have had an additional representative if overseas employees had not been allocated at all, the Court took up the "thornier standing question" of "whether the injury is redressable by the relief sought." *Id*. at 802, 112 S. Ct. at 2776. After expressing doubt as to whether the district court should have granted injunctive relief against the President, the Court said:

> For purposes of establishing standing, however, we need not decide whether injunctive relief against the President was appropriate, because we conclude that the injury alleged is likely to be redressed by declaratory relief against the Secretary alone. See *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 75, n.20, 98 S. Ct. 2620, 2631, n.20, 57 L. Ed. 2d 595 (1978); *Allen v. Wright*, [468 U.S. 737, 752, 104 S. Ct. 3315, 3325, 82 L. Ed. 2d 556 (1984)]. The Secretary certainly has an interest in defending her policy determinations concerning the census; even though she cannot herself change the reapportionment, she has an interest in litigating its accuracy. And, as the Solicitor General has not contended to the contrary, we may assume it is substantially likely that the President and other executive and congressional officials would abide by an authoritative interpretation of the census statute and constitutional provision by the District Court, even though they would not be directly bound by such a determination.

*Id*. at 803, 112 S. Ct. at 2777. Because the Court assumed that federal officials would comply with a judicial interpretation of the statute and constitutional provision governing the census, the Court held that the injury was sufficiently redressable so that the "case or controversy" requirement of Article III was satisfied.

The question in the case at bar is whether the reasoning of *Franklin* extends to a case in which Congress has enacted a statutory scheme but has not created a private right of action as an enforcement mechanism—in such a case, does *Franklin* authorize a district court to entertain a declaratory judgment action seeking a declaration that the statute has been or will be violated? This Court does not believe that *Franklin* reaches so far. The issue in *Franklin* was whether the plaintiffs had standing sufficient to create a case or controversy under Article III. *Id.* at 801, 112 S. Ct. at 2776. The issue here is not whether a case or controversy exists under Article III of the Constitution; the issue here is whether the Declaratory Judgment Act authorizes district courts to exercise jurisdiction over claims that provisions of the United States Code have been violated when Congress declined to create a private right of action for the enforcement of those provisions. *Franklin* did not decide that issue.

The relevant part of the Declaratory Judgment Act provides:

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). It is well settled that the declaratory judgment is procedural in nature: it enlarges the range of remedies available in federal courts but does not extend their jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72, 70 S. Ct. 876, 879, 94 L. Ed. 1194 (1950). The Declaratory Judgment Act does not, therefore, expand the limitations on a court's jurisdiction imposed by Congress. *Id.* at 672, 70 S. Ct. at 879. The availability of relief under the Declaratory Judgment Act "presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677, 80 S. Ct. 1288, 1296, 4 L. Ed. 2d 1478 (1960). In *Schilling*, the

Supreme Court held that "federal courts may not declare a plaintiff's rights under a federal statute that Congress intended to be enforced exclusively through a judicially unreviewable administrative hearing."  *C&E Servs., Inc. v. D.C. Water and Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002).

Congress created two elaborate statutory schemes, the FDCA and the CSA, that are at issue here.  In both statutory schemes, Congress defined the scope of jurisdiction granted to the district courts, and in neither instance did Congress include within the jurisdiction of district courts the authority to entertain causes of action brought by private individuals to enforce the statutes.  Congress, instead, provided for enforcement of both the FDCA and the CSA by the executive branch.

In *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986), the Supreme Court held that when Congress has intended that there be no federal private right of action for violations of a federal standard an action under state law invoking the federal standard does not present a federal question so as to create jurisdiction under 28 U.S.C. § 1331.  The federal statute at issue was the FDCA.  In holding that there was no federal question jurisdiction even though the case required an interpretation of the FDCA, the Supreme Court said:

> The significance of the necessary assumption that there is no federal private cause of action thus cannot be overstated.  For the ultimate import of such a conclusion, as we have repeatedly emphasized, is that it would flout congressional intent to provide a private federal remedy for the violation of the federal statute.

*Id.* at 812, 106 S. Ct. at 3234.  The Supreme Court added in a footnote:

> When we conclude that Congress has decided not to provide a particular federal remedy, we are not free to "supplement" that decision in a way that makes it "meaningless."  Cf. *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625, 98 S. Ct. 2010, 2015, 56 L. Ed. 2d 581 (1978) (When Congress "does speak directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless").  See also *California v. Sierra Club*, 451 U.S. [287,

9

>  297, 101 S. Ct. 1775, 1781, 68 L. Ed. 2d 101 (1981)] ("The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide").

*Id.* at 812 n.10, 106 S. Ct. at 3234 n.10.

The Supreme Court's opinion in *Heckler v. Chaney*, 470 U.S. 821, 105 S. Ct. 1649, 84 L. Ed. 2d 714 (1985), should also be noted. There, as here, several death-row inmates alleged that states were violating the FDCA by using drugs for lethal injection when the FDA had not approved of using those drugs for that purpose. The inmates requested the FDA take enforcement action, but the FDA refused. The inmates filed suit seeking review of the agency decision. The Supreme Court held that the FDA's decision was unreviewable under 5 U.S.C. § 701(a)(2) because the enforcement of the FDCA was committed by law to the discretion of the FDA. *Id.* at 837-38, 105 S. Ct. at 1659. In reaching that holding, the Court surveyed the enforcement provisions of the FDCA and concluded that the FDCA's enforcement provisions "commit complete discretion to the Secretary to decide how and when they should be exercised." *Id.* at 835, 105 S. Ct. at 1658.

*Merrell Dow*, *Skelly*, *Schilling*, and *Heckler* lead to the conclusion that the Declaratory Judgment Act does not authorize actions to decide whether federal statutes have been or will be violated when no private right of action to enforce the statutes has been created by Congress. To entertain, under the auspices of the Declaratory Judgment Act, a cause of action brought by private parties seeking a declaration that the FDCA or the CSA has been violated would, in effect, evade the intent of Congress not to create private rights of action under those statutes and would circumvent the discretion entrusted to the executive branch in deciding how and when to enforce those statutes. *Cf. C&E Servs., Inc.*, 310 F.3d at 201 ("A judicial declaration telling [the Water and Sewer Authority] how to interpret the [Service Contract Act ("SCA")] would constitute an end-run around

Congress's clear intent that the Department of Labor interpret and enforce the SCA in the first instance. *Schilling* teaches that the Declaratory Judgment Act does not authorize such a result."); *Mylan Pharms., Inc. v. Thompson*, 268 F.3d 1323, 1331-32 (Fed. Cir. 2001) (the Declaratory Judgment Act does not authorize a declaratory judgment action for "delisting" under the FDCA when no private right of action for "delisting" exists); *Texas Med. Ass'n v. Aetna Life Ins. Co.*, 80 F.3d 153, 158-60 (5th Cir. 1996) (the Texas Declaratory Judgment Act does not authorize a declaratory judgment action when no private right of action exists); *Johnson v. Parker Hughes Clinics*, No. Civ. 04-4130 PAM/RLE, 2005 WL 102968, at *2 (D. Minn. Jan. 13, 2005) (the court lacked subject matter jurisdiction in a declaratory judgment action regarding HIPAA because HIPAA creates no private cause of action).

The plaintiffs, citing 21 U.S.C. §§ 355(c)(3)(D)(i)(I) and (j)(5)(C)(i)(I), contend that Congress has expressly prohibited only a specific class of declaratory judgment suits concerning new and generic drugs. Those statutory provisions are part of the statutory scheme relating to approval of and patents for new and generic drugs. Congress has authorized actions for declaratory judgments pertaining to patents for new and generic drugs in certain circumstances. *See* 21 U.S.C. §§ 355(c)(3)(D)(i)(II), (j)(5)(C)(i)(II)[2] (authorizing the filing of civil actions to obtain declaratory judgments under 28 U.S.C. § 2201 regarding the validity of patents for drugs for which applicants have sought approval). The two subsections to which the plaintiffs refer impose certain restrictions on such actions. Those subsections and the related provisions have nothing to do with enforcement of the provisions of the FDCA at issue here. It cannot reasonably be inferred from those provisions

---

[2] These provisions are explained more fully in *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998).

that Congress intended to allow a private right of action to enforce the FDCA in the context of a case such as this.

McGehee and Ward seek to bypass the congressionally mandated enforcement schemes for the FDCA and the CSA; in effect, they seek private enforcement of those statutes by means of a declaratory judgment. Congress committed complete discretion to the executive branch to decide when and how to enforce those statutes and authorized no private right of action for the enforcement of those statutes. The Declaratory Judgment Act does not authorize a bypass of that enforcement scheme. Therefore, the Court will not vacate the judgment dismissing the complaints of McGehee and Ward.

The remaining plaintiffs seek leave to amend their complaints to include claims that the ADC has violated or will violate the FDCA and the CSA. For the reasons stated, it would be futile to permit those amendments. *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 921 (8th Cir. 2008).

## CONCLUSION

For the reasons stated, the motion to vacate the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure is DENIED. Document #68.

IT IS SO ORDERED this 26th day of July, 2010.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE